# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

WAYNE H. NORMAN,

    Plaintiff,

vs.

TITLEMAX HOLDINGS, LLC,

    Defendant.

Civil Action File No.

CV416-201

## ORIGINAL COMPLAINT

NOW COMES the Plaintiff, WAYNE H. NORMAN, by and through himself and for his Complaint against the Defendant TITLEMAX, HOLDINGS,LLC, states as follows:

## NATURE OF THIS ACTION

1. Plaintiff brings this action for actual and statutory damages arising out of and relating to the conduct of TitleMax Holdings, LLC , (hereinafter TM), to include all of its affiliates, subsidiaries, and/or related entities, as well as all persons and entities acting on behalf of both parties, including but not limited to both parties, in negligently, knowingly, and/or willfully contacting Plaintiff on his cellular telephone without his prior express consent within the meaning of the TCPA.

2. This is an action for actual and statutory damages for violations of the Telephone Consumer Protection Act (hereinafter, "TCPA"), 47 U.S.C. section 227 *et seq.*

3. 'TM' has violated the TCPA, by contacting the Plaintiff on his cellular telephone via an "automatic dialing system," or "prerecorded messages" as defined by 47 U.S.C § 227(a)(1), without prior express consent within the meaning of the TCPA.

## JURISDICTION & VENUE

4. Jurisdiction arises under the TCPA, pursuant to 28 U.S.C. section 1331.

## PARTIES

5. WAYNE H. NORMAN, (hereinafter, "Plaintiff"), is a natural person who resides in the county of Shelby, state of Tennessee.

6. TITLEMAX HOLDINGS, LLC, (hereinafter, "Defendant"), is a company with an address of 15 Bull St. Savannah, GA 31401, and is a "person" as defined by 47 U.S.C. section 153(39).

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 et seq.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA) 47 U.S.C §227

7. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

8. The TCPA regulates, inter alia, the use of automated telephone equipment, or "predictive-dialers", defined as equipment which "has the capacity...(a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers. 47 U.S.C. § 227(a)(1). Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

9. According to findings by the Federal Communications Commission (FCC), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

10. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

---

[2] 47 U.S.C. § 227 (b)(1)(A)(iii). [3]Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

11. The TCPA prohibits the use of automatic telephone dialing systems and the prerecorded messages to call wireless devices. § 227(b) prohibits… the use of automated telephone equipment;   (1) Prohibitions…"It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States—…"

## A BRIEF OVERVIEW OF TEXT MESSAGING

12. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

13. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-150 characters.

14. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

15. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users

must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

16. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

17. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

18. Text messages are "calls" within the purview of the TCPA.

## ALLEGATIONS OF FACT

19. Plaintiff applied for and received a title loan from the Defendant in May of 2016. On or about the morning of June 20th, 2016, Plaintiff received the first collection text message from the Defendant utilizing SMS code **901-23**.

20. Due to similar solicitation calls/text, Plaintiff placed his cellular telephone number (682) 241-8688, on the national "Do-Not-Call registry in May of 2014 in an effort to cease such action.

21. The first text stated, "TitleMax Svc: Your acct is overdue. Call 708-391-2048. This is a debt collection msg; we may use information provided for such purpose. Txt STOP to end."

22. Plaintiff replied, "I know I'm one day late pls don't text my phone again" The Defendant replied, "Titlemax: At this time we do not monitor txt replies. If you need help please call 888-428-3629 or reply HELP for more info. To op out reply Stop." Plaintiff clearly requested that the Defendant discontinue contacting him, yet the collection text messages continued with increased frequency. This blatant disregard to Plaintiffs request and privacy is unacceptable.

23. Plaintiff requested that the Defendant discontinue texting his cellular phone, yet the annoying solicitation text messages continued.

24. Plaintiff clearly revoked consent the Defendant previously had to be called/texted.[4]

25. The Defendant's telephone calls to Plaintiffs cellular telephone utilizing an "an automatic telephone dialing system" for non-emergency purposes and in the absence of the Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

---

[4] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, (FCC Declaratory Ruling), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (Jan 4, 2008).

26. This technology, upon information and belief, dials several numbers simultaneously and connects the call only to those who answer first.

27. Under the TCPA and pursuant to the FCC's July 2015 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statue.

28. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

29. Plaintiff suffered harm and damages in the form of text message, data, and other charges to his cellular telephone plan, harassment, as well as invasion of privacy.

## QUESTIONS OF LAW

30. Questions of law and fact include, but are not limited to, the following:

a. Whether Defendant made non-emergency calls to Plaintiff's cellular telephone using an automatic telephone dialing system;

b. Whether Defendants conduct was knowing and/or willful;

c. Whether each Defendant is liable for damages pursuant the TCPA.

## COUNT I-TCPA

31. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

32. Without prior express consent, the Defendant contacted the Plaintiff seven (7) times by means of automatic telephone calls/text, **after** Plaintiff requested that the Defendant stop, in violation of 47 U.S.C. section 227(b)(A)(iii).

33. The phone calls were made to Plaintiff without the number being provided to Defendant, and without the prior express consent of Plaintiff.

## PRAYER FOR RELIEF

a) As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each and every call in violation of the statue, pursuant to 47 U.S.C. § 227(b)(3);

b) An award of all fees and costs incurred by Plaintiff;

c) All other cost the Court sees justifiable under the law.

Respectfully submitted,

Wayne H. Norman

509 Elgin apt. 1

Forest Park, Illinois 60130

whnorman@hotmail.com



JUL 13 16
60130 PARK, IL
AMOUNT
$6.45
R2305K137187-07

1006
31401

PRESS FIRMLY TO SEAL       PRESS FIRMLY TO SEAL

# PRIORITY MAIL

 DATE OF DELIVERY SPECIFIED*

 USPS TRACKING™ INCLUDED*

 INSURANCE INCLUDED*

 PICKUP AVAILABLE

* Domestic only

FROM: Wayne Norman
509 Elgin Apt 1
Forest Park, IL 60130

TO:
United States District Court
Southern District of Georgia
Savannah Division
125 Bull St.
Savannah, GA 31401

Expected Delivery Day: 07/16/2016

**USPS TRACKING NUMBER**



9505 5117 9501 6195 0041 31



PS00001000014

EP14F July 2013
OD: 12.5 x 9.5

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



UNITED STATES POSTAL SERVICE